IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY BROWN, ANDY VELAZQUEZ, WILLIAM MIDGETT, and DIANE COUGHLIN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and INSURANCE SERVICES OFFICE, INC.,<br><br>    Defendants. | Case No. 23 C 6065<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mary Brown, Andy Velazquez, William Midgett, and Diane Coughlin (collectively, "Plaintiffs") originally filed this putative class action in state court against Defendants State Farm Mutual Automobile Insurance Co. ("State Farm") and Insurance Services Office, Inc. ("ISO"), (collectively, "Defendants"). Defendants removed the case to federal court, asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs allege that Defendants retain and disclose their protected health information ("PHI") in violation of their right to privacy under Illinois state law, and thus assert claims for negligence (Count I), unjust enrichment (Count II), public disclosure of private facts (Count III), intrusion upon seclusion (Count IV), and negligence *per se* (Count V). Defendants each moved to dismiss Plaintiffs' class action complaint ("CAC") under Fed. R. Civ. P. 12(b)(6). (Dkts. 30, 31). For the reasons discussed below, Defendants' motions are granted.

1

**BACKGROUND**

All well-pleaded allegations are taken from the CAC and treated as true for purposes of resolving these motions to dismiss. Defendant State Farm is a property and casualty insurance company. (Compl. ¶ 20, Dkt. 1-1). Defendant ISO is an association of insurance companies that gathers claim-related information from insurers and then analyzes the information to provide subscribing insurers with statistical, actuarial, underwriting, and claims information. (*Id.* ¶ 22). Plaintiffs allege that Defendants created a scheme whereby ISO processes a massive amount of premium and loss data that it receives from insurers like State Farm, and in turn, those insurers rely on such data to raise premiums and deny coverage. (*Id.* ¶ 15).

According to Plaintiffs, when an individual involved in a car accident submits a personal injury claim to State Farm, it requests and reviews medical records to evaluate the claim and alleged injury. (*Id.* ¶ 32). Plaintiffs here were each injured in a car accident involving a motorist insured by State Farm and thus provided PHI to State Farm "for the limited purpose of evaluating, litigating, or settling" their claims. (*Id.* ¶¶ 43-46). Nevertheless, State Farm retains and uses the claim data for developing rates and underwriting. (*Id.* ¶ 34). In addition, State Farm submits reports containing individuals' PHI to ISO. (*Id.* ¶¶ 13, 36). ISO then analyzes its database of claimants' PHI and other information to create products and services, which it subsequently sells to participating subscribers, including insurers, third-party claim administrators, and self-insureds. (*Id.* ¶ 37). Plaintiffs contend that individuals do not receive notice that their medical information was submitted to ISO or that ISO continues to retain and profit from their PHI. (*Id.* ¶¶ 13, 14).

State Farm and other insurers have provided ISO with approximately three billion detailed premium and loss records, and ISO has a database of more than 32 billion records. (*Id.* ¶ 9). Additionally, ISO's practices generate billions of dollars annually. (*Id.* ¶ 10).

Plaintiffs assert that Defendants' practices violate the applicable standards of care for PHI. (*Id.* ¶¶ 6, 8). Accordingly, they seek to represent two classes:

1. **State Farm and ISO Class**: Any person not insured by State Farm who, while residing in Illinois, was injured by a State Farm insured and provided State Farm with protected health information to evaluate, litigate, or settle their claim, and rather than "return or destroy" their protected health information following the resolution of their claim, State Farm sent it to ISO, who processed it and made it available to ISO subscribers for a fee, on or after July 19, 2018.

2. **ISO Class**: Any resident of Illinois who suffered an injury, while insured by State Farm, and provided State Farm with protected health information to evaluate, litigate, or settle their claim, and rather than "return or destroy" their protected health information following the resolution of their claim, State Farm sent it to ISO, who processed it and made it available to ISO subscribers for a fee, on or after July 19, 2018.

(*Id.* ¶ 53).

Defendants seek dismissal of the CAC for failure to state plausible claims for relief. These motions are fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim, courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a

complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Plaintiffs contend that State Farm violated their privacy rights by disclosing their PHI to ISO, and ISO further violated their privacy rights by collecting, harvesting, and disclosing such information to its subscribers. In contrast, Defendants characterize these disclosures as authorized by law because they help facilitate claims handling, underwriting, and fraud prevention. As such, Defendants argue, Plaintiffs' claims are barred by the immunity provision in the Illinois Insurance Code and insufficiently alleged under common law. Having considered the pleadings, arguments of the parties, and relevant case law, the Court agrees with Defendants.

### I. Immunity under the Illinois Insurance Code

Article XL of the Illinois Insurance Code, entitled "Insurance Information and Privacy Protection," sets forth the standards "for the collection, use and disclosure of information gathered in connection with insurance transactions." 215 ILCS 5/1001. Article XL's immunity provision provides as follows:

> No cause of action in the nature of defamation, ***invasion of privacy or negligence*** shall arise against any person ***for disclosing personal or privileged information in accordance with this Article***, nor shall such a cause of action arise against any person ***for furnishing personal or privileged information to an insurance institution, agent or insurance-support organization***; provided, however, this Section shall provide no immunity for disclosing or furnishing false information with malice or willful intent to injure any person.

215 ILCS 5/1022 (emphasis added).

Disclosure limitations and conditions are addressed in 215 ILCS 5/1014, which generally bars an "insurance institution, agent or insurance-support organization" from disclosing "any

4

personal or privileged information about an individual collected or received in connection with an insurance transaction" except in enumerated circumstances. Defendants assert that the exceptions in Sections C, G, and F control. The Court agrees in part.

First, 215 ILCS 5/1014 (C) permits disclosure:

to an insurance institution, agent, insurance-support organization or self-insurer, provided the information disclosed is limited to that which is reasonably necessary:

    (1) to detect or prevent criminal activity, fraud, material misrepresentation or material nondisclosure in connection with insurance transactions, or

    (2) for either the disclosing or receiving insurance institution, agent or insurance-support organization to perform its function in connection with an insurance transaction[1] involving the individual.

Plaintiffs argue that Section C does not apply because the CAC alleges "State Farm and ISO wrongfully disclosed their PHI *after* the close of litigation or proceedings for which the protected health information was requested, for purposes *unrelated* to adjusting or litigating their claims." (Resp. at 28,[2] Dkt. 44 (citing Compl. ¶ 67)) (emphasis in original). But nothing in Section C limits protection to disclosures pertaining to adjudication of a claim at issue. Rather, the statute excepts information provided "in connection with an insurance transaction," and "insurance transaction" is specifically defined as encompassing a broader range of circumstances than the claims adjudication process. Thus, that argument is a nonstarter.

Plaintiffs also allege that ISO uses Plaintiffs' PHI to "create products and services which it subsequently sells back to its subscribers, including participating insurers, third-party claim

---

[1] 215 ILCS 5/1003(N) defines "insurance transactions" as "any transaction involving insurance primarily for personal, family or household needs . . . which entails: (1) the determination of an individual's eligibility for an insurance coverage, benefit or payment, or (2) the servicing of an insurance application, policy, contract or certificate."

[2] Unless otherwise noted, page numbers in citations are the page number on the CM/ECF header of the filing, not the bottom of the page.

5

administrators, and self-insureds." (Compl. ¶ 37). They reference ISO products and services that "help underwriters decide if they should sell a person an auto policy and at what premium." (*Id.* ¶ 38). Additionally, in support of their allegations, Plaintiffs cite to Carlos Martins' affidavit submitted in an unrelated case.[3] (*Id.* ¶ 37, n. 4). In it, he describes an ISO product, ClaimSearch, which "is a comprehensive system used by the insurance industry to facilitate claims processing and fight fraud." (Martins' Aff. ¶ 2, Dkt. 30-2). Those facts actually support Defendants' position that their disclosures are made to detect fraud and/or facilitate insurance transactions, as permitted under Section C.

Next, 215 ILCS 5/1014(G) permits disclosure for purposes "otherwise permitted or required by law." Defendants point to 215 ILCS 5/123A, which "authorize[s] the existence, operation, and regulation of qualified advisory organizations."[4] More specifically, 215 ILCS 5/123A-9 allows advisory organizations "to compile statistics and to formulate insurance policies, bond forms and underwriting rules and to furnish that which it prepares to its members and subscribers." Notably, the Article defines "member" as "an insurance company who participates in or is entitled to participate in the management of an advisory organization," and defines "subscriber" as "an insurance company which is furnished at its request with those services

---

[3] While Plaintiffs cited to Martins' affidavit in their CAC, they did not attach the affidavit to their complaint. However, ISO included the affidavit as an exhibit to its motion to dismiss. (Dkt. 30-2). Because the affidavit was incorporated by reference into the CAC and Plaintiffs do not object to Defendants' reliance on it in support of their motions, the Court finds it proper to consider the affidavit in ruling on the instant motions. *See Schauf v. Mortg. Bankers Serv. Corp.*, No. 01C4442, 2001 WL 1539051, at *2 (N.D. Ill. Nov. 29, 2001) ("The Court, in reviewing a motion to dismiss, is limited to the allegations contained in the pleadings themselves. Documents attached to the pleadings as exhibits and documents incorporated by reference into the pleadings are considered part of the pleadings. A plaintiff . . . may supplement the complaint with factual narration in an affidavit or brief.") (internal citations omitted).

[4] "Advisory Organization means every person, other than an insurance company who as its primary functions (i) compiles insurance statistics, or (ii) prepares insurance policies, bond forms, and underwriting rules, and (iii) furnishes that which it compiles and prepares to insurance companies who are its only members and subscribers." 215 ILCS 5/123A-2 (a).

provided for . . . by an advisory organization of which it is not a member." 215 ILCS 5/123A-2 (b), (c).

Plaintiffs argue that ISO exceeded its authority under Section 215 ILCS 5/123 because it disclosed information to non-insurance company members and subscribers, including self-insureds and third-party claim administrators. In response, Defendants assert that ISO's membership list has been approved by the state of Illinois, "insurance company" is not defined by the Act, and self-insureds and third-party claim administrators "take up the role of an insurance company" so they require the same access to ISO as other insurance companies. (State Farm's Reply at 10, Dkt. 46). While the existence of a state-sanctioned list tends to weigh in Defendants' favor, the question of whether self-insureds and third-party claim administrators constitute "an insurance company" for purposes of Section G is a factual issue that is not proper for determination at the motion to dismiss stage. Thus, the Court finds that Defendants have not shown that Section G necessarily applies.

Finally, 215 ILCS 5/1014(F) permits disclosure "to a law enforcement or other governmental authority." ISO relies on language in Martins' affidavit indicating that ISO shares data with "state fraud bureaus to permit the identification of claim fraud . . . as well as fraud by claimants." (Martins Aff. ¶ 4.) Even if his statement is true, the CAC alleges that ISO shared Plaintiffs' information with their customers who are not law enforcement or governmental authorities. Accordingly, while some of Defendants' disclosures may be covered by Section F, some others may not qualify.

In sum, Plaintiffs fail to plausibly allege that Defendants' disclosures are not allowed under Section C; on the other hand, Defendants have failed to show that all their disclosures are permitted under Sections F and G.

That said, 215 ILCS 5/1022 grants general immunity from particular causes of action to "any person" who furnishes "personal or privileged information to an insurance institution, agent, or insurance-support organization." Although Plaintiffs do not dispute that State Farm is an insurance institution and ISO is an insurance support organization, they nonetheless contend that the furnishing clause does not apply here because Defendants produced information in violation of the Act. For the most part, though, Plaintiffs rely on conclusory allegations that the mere acts of retention and disclosure of PHI by State Farm and ISO violated their rights to privacy. As the Court has already explained, Plaintiffs paint with too broad of a brush. More importantly, they make no attempt to address the only listed exception to immunity—where a party discloses or furnishes "false information with malice or willful intent to injure any person." Indeed, nowhere in the CAC do Plaintiffs allege any such scienter by Defendants. Thus, the Court finds that pursuant to 215 ILCS 5/1022, Defendants would be immune from negligence and invasion of privacy claims to the extent that they disclosed information to insurance institution and/or insurance support organization for the purpose of fighting fraud and facilitating insurance transactions.

**II.** **Negligence (Count I)**

To state a negligence claim under Illinois law, "a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of the plaintiff's injuries." *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 C 1108, 2024 WL 182211, at *2 (N.D. Ill. Jan. 17, 2024) (citing *Flores v. Aon Corp.*, 242 N.E.3d 340, 353 (5th Dist. 2023)). "The first element—duty of care—may be derived from statute or common law." *Wittmeyer*, 2024 WL 182211, at *2. Plaintiffs rely on both here.

8

Plaintiffs argue that upon receiving their PHI, Defendants had a duty to follow certain standards of care as set forth under the Health Insurance Portability and Accountability Act ("HIPPA"). While Plaintiffs concede that Defendants are not covered entities subject to HIPPA, they point to the Illinois Supreme Court's decision in *Haage* holding that "the obligations of HIPPA's Privacy Rule attach to entities like State Farm and by extension ISO when they acquire private health information from a covered entity in litigation or other proceedings." (Resp. at 11 (citing *Haage v. Zavala*, 2021 IL 125918 ¶ 68). But that is a mischaracterization of the decision.

*Haage* involved a dispute over the scope of a HIPPA qualified protective order ("QPO") in a personal injury action. 2021 IL 125918 at ¶ 1. The plaintiffs' QPO would have allowed PHI to be released, but prohibited nonlitigation use or disclosure and required its return at the close of litigation. *Id*. State Farm, as liability insurer for defendants, intervened and sought entry of its own protective order expressly allowing insurance companies to use, disclose, and maintain PHI for purposes beyond litigation. *Id.* In objection to the plaintiffs' QPO, State Farm argued that as a property and casualty insurer, it was not a "covered entity" under HIPPA and it did not become one by receiving PHI from a "covered entity" in the ordinary course of handling claims. *Id.* ¶ 57.

The Illinois Supreme Court rejected State Farm's position, and concluded that as a recipient of PHI from a covered entity, State Farm was required to comply with the terms of the QPO proposed by the plaintiffs and entered by the trial court that included the "use and disclosure" and "return or destroy" requirements under the HIPAA Privacy Rule. *Id.* ¶ 63. Furthermore, State Farm could not use its non-covered entity status under HIPPA or any other regulatory obligations to exempt itself from a QPO entered in the litigation. *Id.* ¶¶ 65, 69-89.

But in the instant case, Plaintiffs' theory is not that Defendants are using or disclosing PHI in violation of any order entered by a court or administrative tribunal, let alone a QPO entered in

9

pending litigation. Notably, *Haage* did not consider if State Farm or ISO had any independent duty to insureds under HIPPA. Thus, *Haage* is of limited value in assessing the issues presently before the Court. Indeed, *Haage* acknowledges that "[t]he Privacy Rule prohibits a 'covered entity' or 'business associate' from using a person's 'protected health information' except as mandated or permitted by its provisions." *Id.* ¶ 54. Yet, Plaintiffs do not plausibly allege in the CAC that Defendants failed to comply with a specific requirement in HIPAA or the Privacy Rule. Rather, their theory of the case appears to be that HIPPA broadly mandates PHI may never be used or disclosed after litigation ends or at any time for nonlitigation purposes absent authorization from the affected individual. However, they cite no statutory or legal support for that proposition and the Court has not found any. As such, their position is untenable.

More importantly, it is well established that HIPPA does not create a private right of action. *See Doe v. Board of Tr. of the Univ. of Ill.*, 429 F.Supp.2d 930, 944 (N.D. Ill. 2006) ("Every court to have considered the issue . . . has concluded that HIPAA does not authorize a private right of action"); *Haywood v. Novartis Pharms. Corp.*, 298 F. Supp. 3d 1180, 1190-91 (N.D. Ind. 2018) ("HIPPA does not provide a private right of action."). Thus, "state law claims that rely on HIPPA as the basis for establishing negligence are not cognizable because utilizing them in such a way would circumvent HIPPA's enforcement mechanisms." *Haywood*, 298 F. Supp. 3d at1191.

Finally, Defendants are correct that *Haage* also does not stand for the proposition that all insurers and insurance support organizations have a common law duty to safeguard medical information in accordance with a state constitutional right to privacy. Again, *Haage* recognizes that such a right exists—with limits: "The text of our constitution does not accord absolute protection against invasions of privacy. Rather it is *unreasonable* invasions of privacy that are forbidden. In the context of civil discovery, reasonableness is a function of relevance." *Haage,*

10

2021 IL 125918 ¶ 66 (quoting *Kunkel v. Walton*, 179 Ill.3d 519, 538 (1987)) (emphasis in original). Again, Plaintiffs do not offer any context through which the Court should assess the reasonableness of Defendants' actions here, particularly in light of a state statutory scheme that expressly authorizes the sharing of this type of information. They simply assume that every post-litigation or non-litigation related PHI disclosure is unreasonable, which is not the conclusion reached by the Illinois Supreme Court in *Kunkel* or *Haage*. Because Plaintiffs have failed to allege a duty under HIPPA or state law, their negligence claim is subject to dismissal for this additional reason.

### III. Negligence *Per Se* (Count V)

As discussed above, "[o]rdinarily, the duty of care owed by a defendant is defined by common law." *Wittmeyer*, 2024 WL 182211, at *3 (citing *Cuyler v. Illinois*, 362 F.3d 949, 952 (7th Cir. 2004)). But where a statute or ordinance is designed to protect human life or property, Illinois law provides that the statute establishes the standard of care required of a reasonable person and thus fixes the measure of legal duty. *Wittmeyer*, 2024 WL 182211, at *3 (citing *Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*, 362 Ill.App.3d 1211, 299 (4th Dist. 2006)). However, "[a] violation of a statute constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability." *Wittmeyer*, 2024 WL 182211, at *3 (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill.2d 386, 240 (1999)).

Like their negligence claim, Plaintiffs' negligence *per se* claim hinges on Defendants' alleged violation of HIPPA. But Plaintiffs have not satisfied the arduous enhanced requirements for pleading such a claim. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 210 F. Supp. 3d

11

1022, 1042 (S.D. Ill. 2016). (finding plaintiffs' negligence *per se* claim insufficient to satisfy "the higher burden of identifying a statute imposing strict liability").

While Plaintiffs do allege that they are within the class of parties that HIPPA was designed to protect, they do not contend that HIPPA imposes strict liability, nor have they cited or the Court found any authority that would a support a finding. Thus, as currently plead, Plaintiffs do not state a negligence *per se* claim. *See Wittmeyer*, 2024 WL 182211, at *4. Dismissal of the claim is warranted for this additional reason.

### IV. Invasion of Privacy – Public Disclosure of Private Facts (Count III)

In Illinois, to state a claim for public disclosure of private facts, a plaintiff must allege that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (citing *Johnson v. K Mart Corp.*, 311 Ill. App. 3d 573, 579 (1st Dist. 2000)). As discussed *infra*, Defendants are subject to immunity from Plaintiffs' invasion of privacy claims. Nevertheless, the Court considers Defendants' other arguments in favor of dismissal.

Defendants claim that Plaintiffs have not adequately alleged publicity. "Publicity means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023) (internal quotations and alterations omitted). Alternatively, a plaintiff can satisfy the publicity element by alleging that they have "a special relationship with the 'public' to whom the information is disclosed." *Kurowski*, 683 F. Supp. 3d at 849 (citing *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 981 (1st Dist. 1990)).

12

Plaintiffs contend the publicity element is established here because State Farm disclosed Plaintiffs' information to ISO, who in turn disclosed Plaintiffs' information to its thousands of subscribers.

In support of their position, Plaintiffs rely on *John v. Wheaton Coll.*, 2014 IL App (2d) 130524-U. There, the college's president obtained information from the plaintiff's student file and disclosed it to several individuals, including the plaintiff's former partner and her parents, who then used it in a child custody case against the plaintiff. *Id.* at ¶¶ 14, 15. The plaintiff argued that the disclosure fell within the special relationship exception. *Id.* ¶ 23. Ultimately, the court concluded that the disclosure was actionable because the communication was "substantially certain to become one of public knowledge." *Id.* ¶ 79.

Defendants assert that *John* is not applicable here because the court's decision was based on the special relationship exception which is not applicable here. *See id.* ¶ 81 ("On our review . . . we determine the circumstances warrant adoption of the exception."). As such, *John* is unpersuasive. Instead, Defendants point to an Eleventh Circuit case, *Regions Bank v. Kaplan*, No. 17 C 15478, 2021 WL 4852268 (11th Cir. Oct. 19, 2021), which the Court finds to be more analogous to this case. In *Regions*, an individual alleged that the publication of his social security number to Fraud-Net, a fraud database run by the Florida Bankers Association, constituted public disclosure of private facts. *Id*. at *2, *13. The court disagreed, reasoning that "[b]ecause Fraud-Net is both secured and restricted to limited membership, a submission to Fraud-Net is not a disclosure to the public at large or a disclosure that is substantially certain to become public knowledge." *Id.* at 13. Accordingly, the court affirmed the lower court's dismissal of plaintiffs' public disclosure of private facts claim. *Id.* at 12.

Likewise, Plaintiffs allege that ISO provides information in its database to "subscribing insurers." (Compl. ¶ 22). As in *Regions*, the Court finds that ISO's disclosure to a limited

13

membership does not constitute a disclosure to the public at large or a disclosure that is substantially certain to become public knowledge. Accordingly, Plaintiffs' public disclosure of private facts claim is subject to dismissal for this additional reason.

## V. Invasion of Privacy – Intrusion upon Seclusion (Count IV)

"The elements of an intrusion upon seclusion claim under Illinois law are: '(1) an unauthorized intrusion or prying into a plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matters upon which the intrusion occurred were private; and (4) the intrusion caused anguish and suffering.'" *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 596 (N.D. Ill. 2021) (quoting *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013)). "It is the intrusion itself that creates liability, not any subsequent publication or disclosure." *In re Trans Union Corp., Priv. Litig.*, 326 F. Supp. 2d 893, 901 (N.D. Ill. 2004); *see also Bonilla*, 574 F. Supp. 3d at 596 ("The nature of this tort depends upon some type of highly offensive prying into the physical boundaries or affairs of another person, and the basis of the tort is not publication or publicity.") (internal alterations and quotations omitted). Examples of unauthorized intrusion include "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Dinerstein v. Google, LLC,* 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) (quoting *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989)).

Here, Plaintiffs contend that State Farm intruded on Plaintiffs' private concerns by accessing Plaintiffs' information for an illegal purpose and by facilitating an unauthorized third parties' access to such information. Additionally, Plaintiffs contend that ISO intruded by soliciting and receiving Plaintiffs' information without authorization. In response, Defendants argue that

Plaintiffs have not alleged an unauthorized intrusion, as the alleged harm results from what happens with their information, not the method through which it was collected.

Here, "Plaintiffs' claim is deficient because there is no allegation that Defendants obtained Plaintiffs' [information] through an 'unauthorized intrusion.'" *See In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 598 (N.D. Ill. 2022). Instead, Plaintiffs have alleged that (1) they provided State Farm with PHI, (*see* Compl. ¶¶ 43-46), and (2) State Farm submitted reports to ISO containing individual PHI, (*see id*. ¶ 36). Consequently, Plaintiffs' voluntary disclosure of their protected health information dooms their claims against State Farm. *See In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 598. Furthermore, disclosure or receipt of information do not support a claim for unauthorized instruction. *See In re Trans Union Corp., Priv. Litig.*, 326 F. Supp. 2d 893, 901 (N.D. Ill. 2004) (finding that defendant's distribution of information to third parties did not support a claim for unauthorized intrusion); *Dinerstein*, 484 F. Supp. 3d at 594 (finding that allegations regarding defendant's receipt of PHI did not support a claim for unauthorized intrusion).

## VI. Unjust Enrichment (Count II)

"To state a cause of action for unjust enrichment, a plaintiff must establish: '(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634-35 (N.D. Ill. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 137 (1989)). As a threshold matter, Defendants argue that Illinois law does not permit a standalone unjust enrichment claim, and therefore Plaintiffs' unjust enrichment claim fails along with the negligence and invasion of privacy claims. They are correct.

"Unjust enrichment is not a separate cause of action under Illinois law." *Dinerstein*, 484 F. Supp. 3d at 594. "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Like Plaintiffs' negligence and invasion of privacy claims, Plaintiffs' unjust enrichment claim alleges that ISO collected and disclosed Named Plaintiffs' and Class Members' PHI. Because Plaintiffs' claim rest on the same allegedly improper conduct as alleged in their negligence and invasion of privacy claims, it cannot stand.

Defendants also argue that Plaintiffs' unjust enrichment claim fails because Plaintiffs' personal information does not have an independent monetary value; and therefore, Plaintiffs cannot allege that Defendants unjustly retained a benefit to Plaintiff's detriment. Plaintiffs, however, contend that they have alleged several losses, including being deprived of the opportunity to personally profit from the processing and sale of their own information. "Courts have . . . routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 592. Thus, the unjust enrichment claim is subject to dismissal for this additional reason.

16

## CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss are granted, and the CAC is dismissed without prejudice. Plaintiffs are granted leave to file an amended class action complaint consistent with this ruling by 2/7/25.

**DATED**: January 13, 2025          **ENTERED**:

_____
LaShonda A. Hunt
United States District Judge